Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL WYMER,<br><br>                              Plaintiff,<br><br>           vs.<br><br>CARTESIAN THERAPEUTICS, INC.<br>f/k/a SELECTA BIOSCIENCES, INC.,<br>CARRIE S. COX, TIMOTHY BARABE,<br>NISHAN DE SILVA, AYMERIC<br>SALLIN, TIMOTHY SPRINGER,<br>PATRICK ZENNER, and CARSTEN<br>BRUNN.<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)   Violation of § 14 (a) of the Securities<br>        Exchange Act of 1934<br>(2)   Violation of § 20(a) of the Securities<br>        Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Paul Wymer ("Plaintiff"), by and through his attorneys, alleges upon information

and belief, except for those allegations that pertain to him, which are alleged upon personal

knowledge, as follows:

**<u>SUMMARY OF THE ACTION</u>**

1.      Plaintiff brings this stockholder action against Cartesian Therapeutics, Inc. f/k/a

Selecta Biosciences, Inc. ("Cartesian" or the "Company") and the Company's Board of Directors

(the "Board" or the "Individual Defendants," and collectively with the Company, the

"Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of

1934 (the "Exchange Act") as a result of Defendants' efforts to merge with Cartesian Bio, LLC f/k/a Cartesian Therapeutics, Inc. ("Old Cartesian"), through merger vehicles Sakura Merger Sub I, Inc. ("First Merger Sub") and Sakura Merger Sub II, LLC ("Second Merger Sub"), resulting in an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2.      Pursuant to the Merger, First Merger Sub merged with and into Old Cartesian, pursuant to which Old Cartesian was the surviving corporation and became a wholly owned subsidiary of the Company (the "First Merger"). Immediately following the First Merger, Old Cartesian merged with and into Second Merger Sub, pursuant to which Second Merger Sub was the surviving entity (the "Second Merger", and together with the First Merger, the "Merger"). In connection with the Second Merger, Old Cartesian changed its name to Cartesian Bio, LLC.

3.      As a result of the First Merger, on November 13, 2023, Selecta Biosciences, Inc. changed its corporate name to Cartesian Therapeutics, Inc.

4.      The terms of the Proposed Transaction were memorialized in a November 13, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, former Selecta stockholders will own approximately 26.9% of the Company.

5.      Further, on December 13, 2023, the Company effected a distribution of one CVR with respect to each share of Common Stock that was issued and outstanding as of December 4, 2023 (the "CVR Record Date"). The terms of which are as follows: (i) each holder of those certain Common Stock Purchase Warrants, dated as of April 11, 2022 ("Company 2022 Warrants") that were outstanding and unexercised immediately prior to the CVR Record Date was also given a number of CVRs equal to the number of shares of Common Stock issuable under the Company

2022 Warrants held by such holder, as if such Company 2022 Warrant had been exercised in full immediately prior to the CVR Record Date; and (ii) each holder of warrants to purchase Common Stock (other than the Company 2022 Warrants) that were outstanding and unexercised as of immediately prior to the CVR Record Date will be entitled to receive a number of CVRs equal to the number of shares of Common Stock that would have been issuable upon the full exercise of each such respective warrant immediately prior to the CVR Record Date, in each case only upon and subject to the actual exercise of such warrants pursuant to the terms thereof.

6.      Thereafter, on January 31, 2024, the Company filed a Preliminary Proxy Statement on Schedule PRE 14A with the SEC in support of the Proposed Transaction. On February 14, 2024 the Company filed a Definitive Proxy Statement on schedule DEF 14A with the SEC in support of the Proposed Transaction (together, the "Proxy Statement").

7.      The Proxy Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus, in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management created by the rollover of the Board of Directors from the Company formerly known as Selecta into Cartesian; (b) the financial projections for Company and Old Cartesian, provided by Company management to the Company Transaction Committee (the "Transaction Committee"), the Board, and the Company's financial advisor Leerink Partners LLC ("Leerink"); and (c) any and all financial valuation analyses or liquidation analysis that should have been done in connection with the Proposed Transaction, if any, provided to the Transaction Committee and the Board.

8.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into an agreement which will provide little to no consideration to Company stockholders and will significantly dilute the shares held by the Company's public stockholders such as Plaintiff.

9.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

10.     Plaintiff is a citizen of Washington and, at all times relevant hereto, has been a Selecta stockholder.

11.     Defendant Cartesian, a clinical-stage biopharmaceutical company, engages in the research and development of nanoparticle immunomodulatory drugs for the treatment and prevention of human diseases. Cartesian is incorporated under the laws of the State of Delaware and has its principal place of business at 65 Grove Street, Watertown, MA 02472.  Shares of Cartesian Common Stock are traded on the NASDAQ Stock Exchange under the symbol "RNAC".

12.     Defendant Carrie S. Cox ("Cox") has been the Chairperson of the Board of Directors of the Company at all relevant times.

13.     Defendant Timothy Barabe ("Barabe") has been a director of the Company at all relevant times.

14.     Defendant Nishan De Silva ("De Silva") has been a director of the Company at all relevant times.

15.     Defendant Aymeric Sallin ("Sallin") has been a director of the Company at all relevant times.

16.     Defendant Timothy Springer ("Springer") has been a director of the Company at all relevant times.

17.     Defendant Patrick Zenner ("Zenner") has been a director of the Company at all relevant times.

18.     Defendant Carsten Brunn ("Brunn") has been a director of the Company at all relevant times. Brunn is also the President and Chief Executive Officer ("CEO") of the Company.

19.     Defendants identified in ¶¶ 12 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Old Cartesian, a private company, is a clinical-stage company engaged in developing RNA cell therapies for the treatment of autoimmune diseases.

21.     Non-Party First Merger Sub is a wholly owned subsidiary of Cartesian created to effectuate the Proposed Transaction.

22.     Non-party Second Merger Sub is a wholly owned subsidiary of Cartesian created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as

to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26.     Cartesian, a clinical-stage biopharmaceutical company, engages in the research and development of nanoparticle immunomodulatory drugs for the treatment and prevention of human diseases.

*The Flawed Sales Process*

27.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a strategic transaction.

28.     Notably, the Proxy Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given.

29.     The Proxy Statement fails to disclose adequate information regarding the disparity between the Company's public market valuation and the final valuation agreed to in entering into the Proposed Transaction.

30.     The Proxy Statement fails to disclose any financial analyses prepared by Leerink despite the fact that Leerink created certain financial analyses regarding the Company and the

Proposed Transaction which were presented to, and relied on by, the Transaction Committee and the Board.

31.     The Proxy Statement is silent as to the specific nature of the confidentiality agreement entered into between the Company and Old Cartesian, the specific ways, if any, this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so, in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

32.     Furthermore, the Proxy Statement fails to adequately disclose the consideration paid to, or owed to Leerink, the financial advisor engaged by the Company during the sales process for services rendered in relation to the sales process and Proposed Transaction.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On November 13, 2023, Cartesian Therapeutics and Selecta Sciences issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> WATERTOWN, Mass. And GAITHERSBURG, Md., Nov. 13, 2023 (GLOBE NEWSWIRE) – Selecta Biosciences, Inc. (NASDAQ: SELB) today announced that it has merged with Cartesian Therapeutics, Inc., a clinical-stage biotechnology company pioneering RNA cell therapies for autoimmune diseases. In connection with the merger, Selecta announced a $60.25 million private financing led by Timothy A. Springer, Ph.D., member of the Selecta Board of Directors.
>
> With the cash from both companies at closing and the proceeds of the concurrent private financing, the combined company is expected to have over $110 million on hand to support the development of the Cartesian pipeline through the Phase 3 study of lead product candidate, Descartes-08, a potential first-in-class RNA-engineered chimeric antigen receptor T-cell therapy (rCAR-T) for the treatment of MG, as well as the advancement of additional RNA cell therapy programs.

Concurrent with the merger, the combined company has been renamed Cartesian Therapeutics, Inc. The Company's Nasdaq ticker symbol will change to "RNAC" effective prior to the opening of trading tomorrow, November 14, 2023.

"We are thrilled to announce our merger with Cartesian, a true pioneer in the RNA cell therapy space," said Carsten Brunn, Ph.D., who will continue to serve as President and Chief Executive Officer of the combined company. "With several potential value-driving milestones expected in the near-term, including data from the ongoing Phase 2b study of Descartes-08 in MG expected in mid-2024, we are confident that this merger represents a significant opportunity for Selecta stockholders. Cartesian's mission aligns seamlessly with Selecta's commitment to advancing innovative therapies for the treatment of autoimmune diseases, and we look forward to working toward maximizing the potential of this robust pipeline and technology."

"RNA cell therapy has the potential to overcome the challenges of using conventional, costly DNA-engineered cell therapies to treat autoimmune diseases, including their toxicity and the need for preconditioning chemotherapy," said Murat Kalayoglu, M.D., Ph.D., Co-Founder and former Chief Executive Officer of Cartesian. "With a shared vision of bringing meaningful therapeutic options to patients with autoimmune diseases, we are confident that our novel approach can thrive under Carsten's leadership."

**Cartesian's Portfolio and Proprietary RNA Armory® Platform**

Cartesian's internally manufactured portfolio includes RNA cell therapies that are purposefully designed to be administered conveniently in an outpatient setting. Cartesian's RNA-engineering approach has the potential to expand the reach of cell therapy to autoimmunity with potentially safer, potent, and less expensive therapies versus DNA analogs.

Cartesian's proprietary technology platform, RNA Armory®, is designed to enable precision control and optimization of engineered cells for diverse cell therapies leveraging multiple modalities, including autologous, allogeneic, and *in vivo* transfection. In addition, Cartesian's wholly owned, state-of-the-art GMP manufacturing and internal research and development capabilities potentiates the optimization of processes in a rapid and iterative manner.

Cartesian's wholly owned pipeline includes:

- Descartes-08 is designed to be an autologous anti-BCMA rCAR-T. Descartes-08 is currently in clinical development for autoimmune diseases, including MG, a chronic autoimmune disorder that causes disabling muscle weakness and fatigue. Compared to conventional DNA-based CAR T-cell therapies, rCAR-T is designed to not require preconditioning chemotherapy, to have predictable and controllable pharmacokinetics, and to avoid the risk of genomic integration. Descartes-08 has been granted Orphan Drug Designation by the U.S. Food and Drug Administration for the treatment of MG.

Cartesian previously reported positive data from its Phase 2a study of 14 patients with MG who received six weekly infusions of Descartes-08 in the outpatient setting without preconditioning chemotherapy. In the study, the results of which were published in The Lancet Neurology, Descartes-08 was observed to be safe and well-tolerated and to induce deep and durable responses. Enrollment is ongoing in a Phase 2b randomized, double-blind, placebo-controlled trial (NCT04146051) in patients with MG, and topline results are expected in mid-2024.

Beyond MG, initiation of a Phase 2 study of Descartes-08 in patients with systemic lupus erythematosus, a chronic autoimmune disease that causes systemic inflammation which affects multiple organ systems, is expected in the first half of 2024. In addition, initiation of a Phase 2 ocular autoimmune basket study and a Phase 2 vasculitic autoimmune basket study is planned for mid-2024 and the second half of 2024, respectively.

- Descartes-15 is designed to be a next-generation, autologous anti-BCMA rCAR-T. In preclinical studies, Descartes-15 was observed to be significantly more potent than Descartes-08. Cartesian plans to leverage its clinical observations to date from its Descartes-08 clinical program to inform the clinical strategy for Descartes-15 for the treatment of autoantibody-associated autoimmune diseases (AAAD).
- Descartes-33 is designed to be an off-the-shelf (allogeneic) mesenchymal stem cell therapy (rMSC) for the treatment of AAAD. In preclinical studies, Descartes-33 was observed to induce potent degradation of disease-enabling neutrophil extracellular traps.

**Management and Organization**

The combined company will be led by Selecta's Chief Executive Officer, Carsten Brunn, Ph.D., and current Chief Financial Officer, Blaine Davis, as well as several members of the legacy Cartesian team, including Metin Kurtoglu, M.D., Ph.D., as Chief Operating Officer, Milos Miljkovic, M.D., as Chief Medical Officer, Chris Jewell, Ph.D., as Chief Scientific Officer, and Emily English, Ph.D., as Vice President of Quality. Matthew Bartholomae, J.D., Selecta's General Counsel, will continue to serve in this role.

The combined company's Board of Directors will be led by current Selecta Chairman Carrie S. Cox and will include, among others, current Selecta board member Timothy Springer, Ph.D., as well as Cartesian Co-Founders Murat Kalayoglu, M.D., Ph.D., and Michael Singer, M.D., Ph.D. All members of the Selecta Board of Directors prior to the merger will continue to serve on the Board of Directors following the closing of the transaction.

**Merger Terms**

The merger was structured as a stock-for-stock transaction pursuant to which all of Cartesian's outstanding equity interests were exchanged based on a fixed exchange ratio for consideration as a combination of approximately 6.7 million shares of Selecta common stock and approximately 0.38 million shares of Selecta Series A Non-Voting Convertible Preferred Stock ("Series A Preferred Stock") (or approximately 385 million shares on an as-converted-to-common basis). Concurrently with the acquisition of Cartesian, Selecta entered into a definitive agreement for a PIPE investment to raise $60.25 million in which the investors will be issued approximately 0.15 million shares of Series A Preferred Stock (or approximately 149.3 million shares on an as-converted-to-common basis) at a price of $403.46851 per share. Subject to approval of the Company's stockholders, each share of Series A Preferred Stock will automatically convert into 1,000 shares of common stock, subject to certain beneficial ownership limitations. On a pro forma basis, based upon the number of shares of Selecta common stock and Series A Preferred Stock issued in the acquisition and prior to the private financing, stockholders of Selecta immediately prior to the acquisition will own approximately 26.9% of the Company on an as-converted basis immediately after giving effect to this transaction. The acquisition was approved by the Board of Directors of Selecta and the Board of Directors and stockholders of Cartesian. The closings of the transactions are not subject to the approval of Selecta stockholders. On an as-converted basis, assuming the approval of the Company's stockholders of the conversion of the Series A Preferred Stock into common stock, and after accounting for these transactions, the total number of shares of Selecta common stock will be approximately 696.2 million.

In connection with the transactions, a transferrable contingent value right (a "CVR") will be distributed to Selecta stockholders and holders of Selecta's warrants issued in 2022 (the "2022 Warrants") of record as of the close of business on December 4, 2023, but will not be distributed to holders of shares of common stock or Series A Preferred Stock issued to Cartesian or the PIPE investors in the transaction. Additionally, holders of Selecta's warrants other than the 2022 Warrants will be entitled to receive CVRs when and if such warrants are exercised. Holders of the CVR will be entitled to receive certain cash payments from proceeds received by the Company, if any, from its legacy assets, including SEL-212, following the closing of the transaction.

Leerink Partners is serving as exclusive financial advisor and private placement agent to Selecta. Covington & Burling LLP is serving as legal counsel to Selecta. Foley Hoag LLP is serving as legal counsel to Cartesian.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicates that Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of the Company.

36.     For example, Company insiders, currently own large illiquid blocks of Company stock all of which will be converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name and address of beneficial owner | No Conversion of Series A Preferred | | Full Conversion of Series A Preferred | |
|---|---|---|---|---|
| | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned |
| **5% Stockholders:** | | | | |
| Entities affiliated with Timothy A. Springer, Ph.D.[1] | 44,242,842 | 26.2% | 192,953,330 | 31.3 % |
| Entities affiliated with Murat Kalayoglu, MD, Ph.D.[2] | 3,574,104 | 2.2% | 121,267,076 | 19.9% |
| Entities affiliated with Schooner Century Fund LLC[3] | 1,554,064 | 1.0% | 90,524,422 | 14.9% |
| Entities affiliated with Armistice Capital, LLC[4] | 9,375,000 | 5.5% | 9,375,000 | 1.5% |
| **Named Executive Officers and Directors:** | | | | |
| Carsten Brunn, Ph.D.[5] | 261,956 | * | 261,956 | * |
| Blaine Davis | — | * | — | * |
| Chris Jewell, Ph.D.[6] | — | * | 2,717,358 | * |
| Metin Kurtoglu, MD, Ph.D.[7] | — | * | 7,056,150 | 1.1% |
| Milos Miljkovic, MD[8] | — | * | 1,282,936 | * |
| Carrie S. Cox[9] | 259,498 | * | 259,498 | * |
| Timothy C. Barabe[10] | 262,679 | * | 262,679 | * |
| Nishan de Silva, M.D., M.B.A.[11] | 19,666 | * | 19,666 | * |
| Murat Kalayoglu, MD, Ph.D.[2] | 3,574,104 | 2.2% | 121,267,076 | 19.9% |
| Aymeric Sallin[12] | 12,666 | * | 12,666 | * |

| Michael Singer, MD, Ph.D.[13] | 460,060 | * | 23,073,593 | 3.8% |
| Timothy A. Springer, Ph.D.[1] | 44,242,842 | 26.2% | 192,953,330 | 31.3% |
| Patrick Zenner[14] | 67,914 | * | 67,914 | * |

37.     In addition, employment agreements with certain Cartesian executives entitle such executives to retention bonuses in accordance with those previously entered into by the Company and certain executives. Further, the Company Board of Directors will all be rolling over into the Board for the Combined Company, granting those executives and directors benefits not shared by the Company's public stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of Cartesian, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

39.     The Company Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

40.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

        a.   Adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with little to no consideration given;

b.  Adequate information regarding the disparity between the Company's public market valuation and the final valuation agreed to in entering into the Proposed Transaction;

c.  Any financial analyses prepared by Leerink despite the fact that Leerink created certain financial analyses regarding the Company and the Proposed Transaction which were presented to, and relied on by, the Transaction Committee and the Board;

d.  Whether the confidentiality agreements entered into by the Company with Old Cartesian differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties, and if so the specific manner in which they differed;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Old Cartesian, would fall away;

f.  Adequate information regarding the consideration paid to, or owed to Leerink, the financial advisor engaged by the Company during the sales process for services rendered in relation to the sales process and Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Company and Old Cartesians' Financial Projections*

41.  The Proxy Statement fails to provide any financial projections for the Company provided by Company management to the Transaction Committee, the Board, and Leerink and relied upon by Leerink in its discussion with the Company regarding the Proposed Transaction.

42.     The Proxy Statement should have, but fails to provide, certain information in the projections that Company management may have provided to the Transaction Committee, the Board, and Leerink.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

43.     The Proxy Statement fails to provide the Company's financial projections.

44.     The Proxy Statement fails to provide financial projections for Old Cartesian.

45.     This information is necessary to provide the Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46.     Without accurate projection data for Company and Old Cartesian being presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the exchange ratio, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning any Financial Analyses by Leerink*

47.     The Proxy Statement states: "*Opinion of Leerink Partners.* The opinion of Leerink Partners, rendered orally to the Board of Directors on November 10, 2023 (and subsequently confirmed in writing by delivery of Leerink Partners' written opinion, dated November 11, 2023)

that, as of such date and based upon and subject to the various assumptions made, and the qualifications and limitations upon the review undertaken by Leerink Partners in preparing its opinion, the exchange ratio proposed to be paid by the Company pursuant to the terms of the Merger Agreement was fair, from a financial point of view, to the Company, as more fully described below in the section titled '*The Merger—Opinion of Leerink Partners LLC'*."

48.     The Proxy Statement articulates that on November 8, 2023, Leerink reviewed with the Company Board of Directors a preliminary financial analysis in regard to the Proposed Transaction.

49.     Thereafter, the Proxy Statement further reports that on November 10, 2023, Leerink presented its financial analysis with respect to the Proposed Transaction to Company Management. On that same date, the Proxy Statement makes clear that Leerink rendered its Oral Opinion in regard to the Proposed Transaction to the Company Board and Management.

50.     Further, the Proxy Statement expresses that on November 11, 2023, Leerink presented its revised financial analysis of the Proposed Transaction, which was updated to reflect the final valuation.

51.     Despite the clear reliance by the Board on the analyses conducted by Leerink, the Proxy Statement fails to disclose said financial analyses.

52.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

53.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the Board's determination that the

Proposed Transaction is in his best interests as a public Cartesian stockholder. As such, the Board

has violated the Exchange Act by failing to include such information in the Proxy Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

54.     Plaintiff repeats all previous allegations as if set forth in full herein.

55.     Defendants have disseminated the Proxy Statement with the intention of soliciting

stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

56.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection

with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or
> instrumentality of interstate commerce or of any facility of a national securities
> exchange or otherwise, in contravention of such rules and regulations as the [SEC]
> may prescribe as necessary or appropriate in the public interest or for the protection
> of investors, to solicit or to permit the use of his name to solicit any proxy or consent
> or authorization in respect of any security (other than an exempted security)
> registered pursuant to section 78*l* of this title.

57.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy
> statement, form of proxy, notice of meeting or other communication, written or
> oral, containing any statement which, at the time and in the light of the
> circumstances under which it is made, is false or misleading with respect to any
> material fact, or which omits to state any material fact necessary in order to make
> the statements therein not false or misleading or necessary to correct any statement
> in any earlier communication with respect to the solicitation of a proxy for the same
> meeting or subject matter which has become false or misleading.

58.     The Proxy Statement was prepared in violation of Section 14(a) because it is

materially misleading in numerous respects and omits material facts, including those set forth

above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

59.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

60.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

61.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

62.     Plaintiff repeats all previous allegations as if set forth in full herein.

63.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

64.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

65.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Selecta's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

66.     The Individual Defendants acted as controlling persons of Selecta within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Selecta to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Selecta and all of its employees.  As alleged above, Selecta is a primary violator of Section 14 of the Exchange Act and

SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 21, 2024

                          **BRODSKY & SMITH**

                   By: *Evan J. Smith*
                          Evan J. Smith
                          240 Mineola Boulevard
                          Mineola, NY  11501
                          Phone:  (516) 741-4977
                          Facsimile (561) 741-0626

                          *Attorneys for Plaintiff*